241 S.W.2d 96 (1951)
VIRGIL
v.
RISS & CO., Inc.
No. 21556.
Kansas City Court of Appeals. Missouri.
June 4, 1951.
Gage, Hillix & Phelps, James A. Moore, and William A. Collet, all of Kansas City, for appellant.
Donald W. Johnson, Charles V. Garnett, Kansas City, for respondent.
DEW, Judge.
Ronald E. Virgil, as plaintiff in the trial court, brought this action to recover damages to his truck and for the loss of use thereof caused by a collision between the said truck and a tractor alleged to be, at the time, negligently operated while under the control of the defendant under a lease. Upon the death of the plaintiff, his administratrix was substituted as such. At the close of all the evidence the court, on motion, directed a verdict for the defendant. Thereafter the court sustained plaintiff's motion for new trial, and this appeal is taken from that order.
The allegations of the amended petition of the plaintiff, pertinent to this appeal, are that plaintiff, on June 9, 1948, was driving westward on 18th Street at or near its intersection with Cherry Street in Kansas City, Missouri; that a truck leased and under the control of defendant approached said intersection from the north on Cherry Street, driven by defendant's agent, servant or employee, in the course of his employment, and which was so negligently and carelessly driven and operated as to be permitted to run into plaintiff's truck; that the negligence consisted of the *97 operation of the defendant's truck at an excessive and dangerous rate of speed; the failure of the operator to keep a lookout laterally, or to apply his brakes thereon timely, or to keep same under reasonable control; an attempt to cross the intersection when plaintiff's truck, was already upon and crossing the intersection; failure to yield the right of way, permitting the brakes of the defendant's truck to become very loose and ineffective and operating the truck without two sets of adequate brakes in good working order, as required by law. The allegations regarding the statutory requirement of two sets of brakes were inserted by amendment at the trial.
The answer was a challenge of the sufficiency of the petition, and a general denial.
On May 7, 1948, Ed. Wiel, owner and driver of the truck which collided with plaintiff's truck, executed a lease in which he was described as "an independent contractor", by which he leased his trailertruck to the Rocky Mountain Industries, Inc. for a period of one year, with the right of lessee to re-lease the same to a common carrier. Among other provisions the lease provided that lessor would look solely to lessee for consideration of the lease, would be fully responsible for and indemnify lessee or re-lessee against loss through all negligence of lessor or the equipment operator; that during the existence of the lease the truck would be under the complete control of the lessee, or if re-lease be entered into with common carrier, then to such common carrier, "for the limited purpose of safety to the public and safe delivery of the shipment". The lease further provided that the lessor agreed to maintain his equipment in good and efficient working order, including gas, oil, tire and equipment operating cost at his sole expense, to maintain fire, theft and collision insurance covering the equipment, and to observe and comply with all safety requirements of the I. C. C. and other regulatory bodies. It was further provided that lessor would idemnify lessee against any liability resulting from the injury or death of the driver and for any loss or damage resulting from negligence of the driver. The lease provided for cancellation forth with by either party upon suffering from breach of one or more of the covenants by the other.
Thereafter and upon the same day the Rocky Mountain Industries, Inc., as an independent contractor, re-leased to defendant Riss & Company the Weil truck upon oral consideration agreed to separately, for one year thereafter, and on a form similar, but not identical, to the `first lease above described. The relationship which the Rocky Mountain Industries, Inc. bore to Riss & Company is not clearly shown except that they were very closely related if they were not in fact, for all practical purposes, one and the same company. It does not seem to be disputed that the lease operative between Ed Weil and the defendant was the lease which was signed by Weil. Defendant admits, and in fact asserts, that plaintiff's evidence showed Weil's relationship to defendant was that of independent contractor.
Andrew Earl Skinner, employee of the plaintiff, testified that he was driving the plaintiff's truck west on 18th Street, approaching Cherry Street on June 9, 1948, at the rate of about 20 to 25 miles an hour; that he slowed down to about 15 or 18 miles an hour as he reached the intersection, at which point he looked north and could see at least 25 feet, and saw no approaching vehicles and proceeded to cross the intersection, and after getting half way across, he saw the defendant's tractor coming and he tried to get out of the way, but when he reached the west end curb of Cherry Street, defendant's tractor hit the plaintiff's truck. He said that when he first saw the defendant's tractor it was some 20 to 25 feet from him, and approaching about 35 miles an hour. Defendant's tractor collided with the plaintiff's truck in about the center, and knocked the bed off the truck, capsizing the bed and throwing it to the southwest corner of the intersection, and threw the chassis against a telephone pole, turned it around and left it heading east. He explained in detail the damages. There was other evidence, photographic and otherwise, tending to corroborate plaintiff's witness Skinner.
*98 Ed Weil, in behalf of the plaintiff, testified that on the morning of the accident, he arrived in Kansas City after a trip for defendant from Colorado. He detached his trailer for unloading and left it at the Riss & Company terminal. Later he left the terminal in his detached tractor to get his radiator repaired. As he crossed 12th Street at Cherry Street, going south, he heard a hissing sound, noticed that his air gauge quickly went down "and the orakes went out", and that his tractor rapidly gained speed on the down grade. He grabbed for the emergency brake but it did "no good". He explained that the emergency brake was connected with the same air system as the foot brake, and that when the system is working properly, the pressure may be applied by the foot brake and held by the emergency brake, but that without the aid of the pressure through the foot brake, it was very hard to get any brakeage with the hand brake alone, which was difficult to reach and apply except possibly to prevent the gain of momentum, or to stop the tractor when it was rolling. He explained further that he could not even sound the horn because the air system was not functioning. The tractor weighed about 13,000 pounds. He explained further that on account of the motor being a Diesel engine, there was no way to throw the motor into a lower gear, nor would it have availed anything to shut the motor off because after losing the compression, the tractor would have rolled even faster. He said plaintiff's truck loomed up in front of him at 18th Street and there was nothing for witness to do except to keep the tractor straight. He said the plaintiff's truck could not possibly have gotten out of his way because defendant's tractor was traveling too fast.
Weil testified that while operating under the lease with defendant he paid for his own repairs on the tractor, selected the place where the repairs were to be made, and that he was not compensated for any time lost while having such repairs made. He said he had had no trouble with the brakes on the trip from Denver to Kansas City, and had no indication that they were defective.
Plaintiff's motion for new trial was sustained on three of the grounds set forth, to-wit: (1) "The court erred in sustaining the motion of the defendant for a directed verdict at the close of all the evidence in the case". (7) "The court erred in sustaining defendant's motion for a directed verdict at the close of all the evidence in this case upon the grounds that no evidence was adduced to support a finding that the driver and owner of the Corbitt tractor was the agent, servant or employee of the defendant, or that he was under its control, or that said Corbitt tractor was under the control of defendant at the time and place in question." (8) "The court erred in sustaining defendant's motion for a directed verdict at the close of all the evidence in this case upon the ground that no evidence was adduced to support a finding that any relation existed between the defendant and the driver of the tractor which would make the defendant responsible for the acts or omissions of said driver at the time and place in question."
The effect of the grounds on which the trial court granted plaintiff's motion for new trial is that there was evidence to support a finding that Weil, the driver and owner of the tractor under lease to defendant, was an agent, servant or employee of the defendant and under defendant's control, or that the tractor was under its control at the time and place of the accident, and that there was evidence to support a finding that a re-lease existed which would make defendant responsible for the acts and omissions of Weil at the time and place in question. Under Specification 1 of the motion for new trial, the court ruled generally that it erred in sustaining defendant's motion for a directed verdict.
Defendant's points on this appeal are that for any liability to exist on its part in this case the plaintiff's evidence must support a finding either (1) that Ed Weil was the servant or agent of defendant at the time and place of the accident and performing a duty owed to the defendant, or (2) was an independent contractor, operating as a common carrier under defendant's *99 franchise. It asserts that plaintiff's evidence failed to show Ed Weil was an agent or servant of defendant at the time and place of the collision, or if he were, that he was then acting in that capacity when he was driving his detached tractor on a mission to get his radiator repaired; but that such evidence does show that he was then and there an independent contractor, but engaged at the time in no duty owed to defendant, but one assumed by him under the lease to keep his equipment in repair.
It is not disputed that defendant was a common carrier, operating under a government franchise; that Ed Weil possessed no such franchise and, as an independent contractor, had leased his tractor and trailer to defendant for a term not yet expired, for use under defendant's franchise, as shown by the terms of the lease. It is the general rule that a person is not liable for the negligence of his independent contractor. The principle of respondent superior does not generally apply to such relationship. The well known definitions and distinctions of the two kinds of relationships are now settled. Bass v. Kansas City Journal Post Co., 347 Mo. 681, 148 S.W.2d 548.
It is also settled that even if in a given case the general relationship of independent contractor exists, a nondelegable duty cannot thereby be delegated to the independent contractor. In the performance of its charter duties, a common carrier cannot, by contract with an independent contractor, evade the carrier's liability for the contractor's negligence in the operation of the leased equipment. As to such negligence and as between defendant and third parties, the contractor would remain in the capacity of agent of the carrier. Cotton v. Ship-By-Truck Co., 337 Mo. 270, 278, 85 S.W.2d 80. The rule is stated in Restatement of Torts, Sec. 428, as follows: "An individual or a corporation carrying on an activity which can be lawfully carried on only under a franchise granted by public authority and which involves an unreasonable risk of harm to others, is subject to liability for bodily harm caused to such others by the negligence of a contractor employed to do work in carrying on the activity."
In Costello v. Smith, 2 Cir., 179 F.2d 715, 16 A.L.R.2d 954, one of the defendants was a common carrier of freight by truck, operating under a certificate from the Interstate Commerce Commission, 49 U.S.C.A. § 306. It leased a trailer truck from another defendant, who had no such certificate, and who furnished the driver. It was sought to hold the common carrier liable for negligence of the driver, resulting in an accident on the highway. In the discussion, 179 F.2d at page 717, the court restated the rule that: "One who can lawfully operate only under a public franchise cannot escape liability by engaging an independent contractor to carry on the activity for him. Restatement, Torts, § 428. It is an exception to the independent contractor rule." However, the court in that case proceeded to point out that such exception would not obtain in a situation where the independent contractor, at the time and place, was not engaged in the performance of his duties to the carrier. In that case the evidence showed that the contract with the independent contractor was for a one way trip, and the accident happened on the return trip. The court held that he was not then engaged in the performance of his duties to the carrier.
Whether or not, as between Weil and defendant, Weil was on a mission solely for his own benefit or for which he was solely responsible under the lease, the question here is whether, as between the defendant carrier and third parties injured through the negligent operation of the tractor under lease, the defendant can evade the liability for such negligence. If the defendant at the time and place had no control nor right of control or supervision over the tractor and assumed no duty or responsibility for its condition or operation at the time and place, a situation would arise as in the Costello case, supra, where, despite the independent contractor relationship theretofore existing, the liability at the time was that of the independent *100 contractor alone. But admittedly the lease here, not yet expired, specifically provided that during its existence, the equipment leased "shall be under the complete control of the lessee * * * for the limited purpose of safety to the public and safe delivery of the shipment". One of the requirements of the law which was binding on the defendant and all persons operating motor vehicles on the public highway is that all motor vehicles "shall be provided at all times with two sets of adequate brakes, kept in good working order". Section 304.560, R.S.Mo. 1949. Under the plaintiff's evidence and under the law the Weil tractor was, at the time of the accident, under the control or right of control of the defendant, and for the specified "purpose of safety to the public". There was ample evidence that the brakes did not conform to the requirements of the statute and that their defective condition caused or contributed to cause the collision with plaintiff's truck. As a common carrier, under public franchise, operating a tractor under lease, the defendant could not, and in law did not, by its lease, delegate to Weil its liability and responsibility for failure to comply with the statute respecting the brake equipment. Cotton v. Ship-By-Truck Co., supra.
Defendant seeks to eliminate from consideration its liability, if any, under the above statute, on the grounds that the evidence was not sufficient to submit to the jury any independent negligence of the defendant on that issue, and that the issue was not in the case below and cannot now be injected. In the amended petition the failure to provide two sets of adequate brakes "as required by law", was plainly alleged as an assignment of defendant's negligence. It was one of the allegations put in issue by the general denial. There was ample evidence as to the condition of the brakes, and upon the motion of defendant for a directed verdict at the close of plaintiff's evidence, proof of that item of negligence was specifically argued to the court. Whether or not the evidence established any "independent" negligence of defendant for the condition of the brakes is immaterial, if it was negligent in that respect at all. We must consider the issue in the case.
It is our conclusion that the trial court did not err in sustaining the plaintiff's motion for a new trial. The order so made is affirmed.
All concur.