Cassie OGLESBY (Plaintiff), Respondent,

v.

ST. LOUIS PUBLIC SERVICE COMPANY, a Corporation (Defendant), Appellant.

No. 30414.

St. Louis Court of Appeals.

Missouri.

Sept. 20, 1960.

Donald L. Schmidt, St. Louis, for appellant.

Wood & Raack, William J. Raack and Marvin S. Wood, Clayton, for respondent.

RUDDY, Judge.

This is an action to recover damages for personal injuries alleged to have been suffered by plaintiff while she was a passenger on a streetcar owned and operated by defendant. A jury found in her favor and assessed damages at $2,500. Defendant has appealed.

The sole issue of negligence submitted to the jury, contained in Instruction No. 1, was based on the res ipsa loquitur doctrine. Defendant in its first point contends that it was error to instruct under this doctrine

because under plaintiff's pleading and proof she "has a specific negligence case." In her pleading plaintiff, after alleging that she was a fare paying passenger on one of defendant's streetcars, further alleged that "plaintiff was alighting from said streetcar and defendant negligently caused and permitted the doors to close and said streetcar to start up, whereby she was caused to sustain" injuries.

Plaintiff's evidence showed that she was a blind person and that she and her husband boarded a northbound Grand Avenue streetcar at Grand and Olive Streets in the City of St. Louis in the late afternoon of April 15, 1958. Plaintiff was seated on the right side of the streetcar between the front and the rear doors. Plaintiff's husband did not occupy a seat. He stood in the aisle beside plaintiff. It was their intention to get off of the streetcar at the intersection of Grand Avenue and North Market Street.

When the streetcar arrived at Grand Avenue and North Market Street it stopped. After the streetcar came to a full stop plaintiff arose from her seat and was led to the rear doors by her husband. He held her left hand with his right hand as they proceeded down the aisle with the husband leading the way. They did not know if others preceded them in getting off of the streetcar.

When plaintiff and her husband reached the rear doors, her husband continued to hold her hand. They proceeded to alight and started down the steps. The husband reached the ground still holding plaintiff's hand. At this point plaintiff had reached the second step and was in the act of lifting her right foot to make the last step onto the ground when the doors of the streetcar closed on the arm of the husband who was still holding the hand of plaintiff. After the doors closed and while plaintiff was in the act of lifting her right foot to make the last step out of the streetcar, the streetcar started and moved forward causing plaintiff to be thrown and to fall. When the doors closed on the husband's arm and the street-

car started forward some of the passengers shouted to the motorman. Thereafter, the streetcar came to a stop and the doors opened. Plaintiff did not know how far the streetcar moved.

Plaintiff said the doors of the streetcar did not touch her. She could not see the doors close, but could hear them close in front of her, at which time her husband continued to hold her hand. She testified that when the streetcar started "that gave me a snatch and I was overbalanced." The husband testified he could not see what happened to his wife, but said, "I could tell by the movements of my hand from the outside that she was slung * * *." In describing the movement of the streetcar after the doors closed, he said, "I know it made a jerk up." He did not know how far the streetcar moved, stating "it might have moved five or ten feet, it was so sudden."

Defendant argues that Plaintiff's Instruction No. 1 is framed under the res ipsa loquitur doctrine but fails to require the jury to find that there was an unusual occurrence. It holds that an unusual occurrence from which negligence can be inferred is a basic element of the res ipsa loquitur doctrine, citing Fuller v. St. Louis Public Service Co., Mo.App., 245 S.W.2d 675, loc. cit. 677, wherein this court said:

"In order to invoke the res ipsa loquitur doctrine there must be evidence of an unusual occurrence of a kind that gives rise to inference of negligence of some sort, the nature of which is unknown to the plaintiff."

Instruction No. 1 directed the jury, inter alia:

"* * * that if you find and believe from the evidence that on the occasion in question plaintiff was in the act of alighting from defendant's streetcar at the place mentioned in evidence, and that she was accompanied by and holding on to her husband who was preceding her in the act of alighting from said streetcar, and that while plaintiff ...

was so doing, if you so find, the doors of defendant's streetcar suddenly closed on her husband's arm, and defendant's streetcar was started in motion and that as a direct result thereof * * * was * * * injured, if you so find, then the Court instructs you that from such facts aforesaid, if you believe them be true, you may infer that defendant was negligent * * *."

Defendant asserts that this instruction does not require the jury to find "any sudden, unusual or extraordinary movement" of the streetcar and that, therefore, the instruction authorizes an inference of negligence from usual and ordinary operation of the streetcar. It is unnecessary for the instruction to require the jury to specifically find that an unusual occurrence took place. It is enough if the facts which the jury are required to find bespeak an unusual occurrence. We think that the facts hypothesized in the instruction relate an unusual occurrence. Certainly, defendant would not contend that the closing of the doors and the starting of the streetcar when a passenger is in the act of alighting is a usual and normal thing in the operation of its streetcars.

In the case of Hall v. St. Louis Public Service Co., Mo., 266 S.W.2d 597, plaintiff had signalled her intention to alight from the bus and when alighting, as she descended the exit steps the door of the bus closed upon her body, holding her partly within and partly without the bus. The bus started forward dragging plaintiff with it. The instruction upon which plaintiff's case was submitted to the jury was predicated upon the theory of res ipsa loquitur negligence. In the Hall case defendant insisted that the instruction did not comply with the requisites of the res ipsa loquitur doctrine, in that it did not require a finding of an unusual occurrence. The instruction upon which plaintiff's case was submitted directed the jury that if it found that "while plaintiff was in the act of alighting * * * the doors of said bus closed about plaintiff

and that (she) was caused to be thrown and injured * * * you may infer that defendant was negligent * * *." In answering defendant's complaint the court, at loc. cit. 599, said:

"We think this argument begs the question. The closing of the bus doors upon plaintiff's body as she was in the act of alighting from the bus in the usual manner in and of itself bespeaks an unusual occurrence. The fact that the doors closed before she was given time to pass beyond them bespeaks their sudden closing. The fact that they imprisoned her body bespeaks their violent closing."

The court held that the instruction constituted an adequate submission of plaintiff's case under the res ipsa loquitur doctrine.

In the instant case we have the sudden and unexpected closing of the doors and the sudden starting of the streetcar at a time when plaintiff was in the act of alighting from said streetcar. Defendant in its argument does not seem to contend that the closing of the doors and the starting of the streetcar when the plaintiff was in the act of alighting would not be an unusual occurrence, but seems to contend only that the instruction should have directed the jury to further find that these facts, if believed, constituted an unusual occurrence. Such a direction was unnecessary. The facts hypothesized in the instruction, if found to be true by the jury, bespeak an unusual occurrence from which negligence may be inferred.

Defendant makes a further contention in connection with the submission of the case under the res ipsa loquitur doctrine. It asserts that plaintiff's pleading and proof demonstrated specific negligence and, therefore, the court was without authority to submit the case to the jury under the res ipsa loquitur doctrine.

Defendant in support of this contention cites Hoffman v. St. Louis Public Service Company, Mo., 255 S.W.2d 736, wherein

the Supreme Court approved an instruction submitting the case to the jury on specific negligence when the evidence showed that the bus moved when plaintiff was in the act of boarding it and that plaintiff did not know what caused the bus to move.

However, in an opinion in the Hall case, supra (266 S.W.2d loc. cit. 600) handed down subsequent to the Hoffman case, the Supreme Court En Banc, in disposing of a contention similar to the one presented in the instant case, quoted with approval from the case of Williams v. St. Louis Public Service Company, 363 Mo. 625, 253 S.W.2d 97, as follows:

" 'Appellant insists that, if the evidence is sufficient to make out a submissible issue or prima facie case as to any specific negligence of the defendant which may have been the proximate cause of his injury, the cause may not be submitted under the res ipsa loquitur doctrine. Such is not the rule in this state. The applicable rule appears from the cases above cited. The pleadings and evidence may be such that a cause may be submitted on either general or specific negligence at plaintiff's election. Submission under the res ipsa loquitur doctrine may not be denied unless specific negligence, the real or precise cause is definitely shown by direct evidence.' See also Killinger v. Kansas City Public Service Co., Mo.Sup., 259 S.W.2d 391, 395."

The facts in the Hall case parallel the facts in this case, with one exception, in that plaintiff was not caught in the doors in the instant case. However, both cases were predicated on untimely closing of the doors and the starting of the vehicles. There is nothing in plaintiff's case which shows definitely by direct evidence the real or precise cause of the closing of the doors and the starting of the streetcar. As said in the Hall case, unless the real or precise cause is definitely shown by direct evidence, submission under the res ipsa loquitur doctrine may not be denied. The pleading and proof in the Hall case, with the one exception which we deem immaterial, is essentially the same as that in the instant case. The evidence in plaintiff's case herein did not definitely show what caused the streetcar doors to close and the streetcar to start. Absent such a showing, plaintiff was entitled to have her case submitted under the res ipsa loquitur doctrine.

In the case of McSkimming v. St. Louis Public Service Company, Mo.App., 257 S.W.2d 176, the doors of the bus closed on plaintiff and they opened quickly causing plaintiff to fall to the street. We held the case was properly submitted to the jury upon the res ipsa loquitur doctrine citing the case of Williams v. St. Louis Public Service Co., supra, as authority for our holding. Defendant's contention in the instant case must be overruled.

Plaintiff in her petition alleged that "defendant negligently caused and permitted the doors to close *upon her* and said streetcar to start up * * *." (Emphasis ours.) At the close of plaintiff's case she was permitted to amend her petition by deleting the words "upon her" from her petition so as to conform to the evidence. Defendant objected to the amendment of the petition. This objection was overruled by the trial court and defendant then asked that a mistrial be granted and this request was denied. Defendant does not contend that the court erred in permitting the amendment, but only contends the trial court erred in failing to grant a mistrial or a continuance. Plaintiff's evidence showing that the doors closed on the arm of plaintiff's husband and that the doors did not touch plaintiff was given without any objection on the part of defendant.

The record does not show any request by defendant for a continuance. When defendant's counsel asked for a mistrial after the amendment was permitted, he predicated his request on the need for time "to prepare our defense." He did not then state the nature of the defense. In its brief defendant seems to indicate that it was denied an opportunity to subpoena witnesses who would testify that plaintiff was not caught

in the doors. At the trial defendant produced several witnesses whose testimony tended to show that plaintiff was not struck by the doors.

Betty Marts, a witness for defendant, testified that plaintiff was not in the doorway or at the doors when the doors closed and that the arm of plaintiff's husband was not caught in the doors when they closed.

Elmer Louis McGee, another witness offered by defendant, testified that he saw the arm of plaintiff's husband caught in the doors but he saw no one on the steps at that time and saw no woman fall. We are unable to follow the reasoning of defendant when it complains that it was denied the opportunity of bringing in additional witnesses who would testify that plaintiff was not caught in the doors. Such testimony would merely verify what plaintiff contended, namely, that she was not caught in the doors. Defendant produced two witnesses to the effect that plaintiff was not caught in the doors and any additional witnesses who would testify in like vein would be merely cumulative.

■ We do not think that plaintiff's evidence and the amendment of plaintiff's petition to conform to the evidence introduced a substantial and material change in the theory of plaintiff's cause of action. Plaintiff's cause of action was based on the closing of the doors and the starting of the streetcar. Defendant's defense was that plaintiff was not at the doorway and, therefore, was not alighting from the streetcar when the doors closed and the streetcar started. Defendant's witnesses support this defense.

Nor are we convinced that defendant was surprised by the alleged failure of plaintiff's evidence to conform strictly to her petition. Plaintiff's deposition was taken by defendant prior to trial. In her deposition she was questioned about the closing of the doors and whether the doors closed upon her. While some of her answers indicated that the doors may have struck her, her testimony in the deposition was such as to indicate to defendant's counsel taking the deposition that she did not know if the doors struck her, for he asked: "Well, then, of your own knowledge you don't know whether the doors did strike you? A. Huh uh; huh uh." The question of defendant's counsel at the time of the taking of the deposition clearly indicates that he was not convinced that plaintiff's testimony indicated that the doors did strike her. It is to be observed that defendant does not now assign as error the action of the trial court in permitting the amendment at the close of plaintiff's evidence. The only contention urged is that the trial court erred in failing to grant a mistrial or a continuance to the defendant. Defendant cites several cases among which is the case of Davis v. Kansas City Public Service Company, Mo., 233 S.W.2d 679, at loc. cit. 683, wherein the court set out the general rule to be followed as follows:

> " 'the question of whether an amendment to a pleading should be allowed during the course of a trial, and, if so, whether a continuance should follow if applied for, are all matters reposing largely in the sound discretion of the trial court.' "

As we have said the defendant did not ask for a continuance and we do not think that under the circumstances the trial court abused its discretion in denying a mistrial.

Defendant in its next point relied on contends the trial court erred in sustaining plaintiff's objection to the offer of defendant to introduce moving pictures demonstrating the operation of the rear doors of the streetcar. In a consideration of this point it should be observed that before defendant offered to introduce moving pictures it offered, and the court admitted in evidence, several still pictures which the operator of the streetcar said fairly and accurately represented the doors of the streetcar he operated on the occasion of the injury to plaintiff.

When the trial court asked defendant's counsel to state the purpose of the offer to introduce the moving pictures he said they would " * * * demonstrate that the doors of the streetcar can be closed upon an individual without injuring them. These movies were taken at the time when the pleadings in this case were such that the allegation was that the doors of the streetcar were closed upon the plaintiff and the streetcar started. We at that time anticipated from the pleadings and from the deposition that this case was a door closing type of accident. We, therefore, took these movies and prepared our defense in this manner."

There was no contention on the part of plaintiff that she was injured by the doors striking her. The moving pictures would in no way have supported defendant's theory of defense, which was that plaintiff was not on the steps at the time when the doors closed on her husband's arm and the streetcar started forward. As we pointed out before, defendant had introduced pictures which showed the position of the rear doors and their relationship to the steps and the surrounding area. As we said there was no contention that the doors were the instruments which injured plaintiff. Therefore, defendant's stated purpose in offering the moving pictures, namely, that the doors can be closed upon an individual without injury was immaterial and irrelevant to the issues in the case. There was no issue in the case relative to any possible injury to the arm of the husband of plaintiff.

■■ The admission of still or moving pictures is a matter addressed to the discretion of the trial court. Faught v. Washam, Mo., 329 S.W.2d 588; Harris v. St. Louis Public Service Co., Mo., 270 S.W.2d 850; Randall v. Steelman, Mo.App., 294 S.W.2d 588; Philippi v. New York C. & St. L. R. Co., Mo.App., 136 S.W.2d 339. Under the circumstances of this case we see no abuse of discretion by the trial court in refusing to admit the moving pictures.

In its final point defendant contends the trial court erred in permitting plaintiff's doctor to testify that plaintiff told him she was injured when she was getting off a streetcar. Plaintiff's doctor was asked what plaintiff had told him about the accident. An objection to this inquiry was lodged by counsel for the defendant on the ground that any history of the accident would be hearsay. The objection was sustained. Thereafter, the following questions were propounded and answers given:

"Mr. Raack: Well, Doctor, is the history that you obtain from a patient, does it form part of your diagnosis in a case? A. It does.

"Mr. Raack: Your Honor, on that basis I would like to go into the history that the doctor obtained from Mrs. Oglesby at the time he first saw her.

"The Court: In order to have properly treated her, did you have to know what happened to her?

"A. I did, it was necessary.

"The Court: All right, objection overruled.

"Mr. Raack: Tell us then, if you will, Doctor Hurt, what history you obtained from Mrs. Oglesby. A. The following: My husband and I were getting off of a streetcar—

"The Court: Just tell us what she told you with reference to the trauma she received."

Thereupon, another objection was lodged by defendant's counsel and the following took place:

"Mr. Raack: Maybe we could solve it this way. Doctor, we are not interested in all of the details she told you. Did she give you a history of having been in an accident? A. She did.

"Q. Did she tell you when she had been in that accident? A. On the 15th."

**364**

Defendant now contends that the testimony of the doctor that plaintiff and her husband were getting off of a streetcar was hearsay, which testimony defendant states tended to bolster plaintiff's story in the eyes of the jury. It is obvious that very little history is included in the doctor's testimony. The fact that plaintiff and her husband were getting off of a streetcar on the day before her examination by the doctor was testified to by plaintiff and her husband. Therefore, no new fact was introduced into the case. The doctor's testimony did not relate any facts which had not been established previously by competent evidence. We fail to see that these statements of the doctor were prejudicial to the defendant's cause of action. Huffman v. Terminal Railroad Ass'n of St. Louis, Mo., 281 S.W.2d 863, loc. cit. 871; Lesch v. Terminal R. R. Ass'n of St. Louis, Mo., 258 S.W.2d 686, 691; Gaines v. Schneider, Mo.App., 323 S.W.2d 401, loc. cit. 405.

We think that the court committed no error for another reason. The evidence showed that plaintiff's doctor had examined her on the 16th day of April for the purpose of treating her and not merely to qualify as an expert witness in the case. The doctor testified that the history he obtained was necessary to form a part of his diagnosis and treatment in the case. It is the rule that where the history is necessary to enable the doctor to make an intelligent diagnosis that such history is admissible as an exceptoin to the hearsay rule. Lesch v. Terminal R. R. Ass'n of St. Louis, supra; Gaines v. Schneider, supra. The doctor in testifying to the history given to him by the plaintiff did not relate any of the circumstances of the accident, nor the manner in which the plaintiff sustained her injuries. We can see no error in the trial court's action in permitting the doctor to testify that plaintiff told him she and her husband were getting off the streetcar on the 15th day of April.

Respondent filed a motion to dismiss this appeal for failure to comply with Supreme Court Rule 1.08 [1]. We have examined the motion and overrule same.

Finding no error, the judgment should be affirmed. It is so ordered.

WOLFE, P. J., and ANDERSON, J., concur.

---

1. Now Civil Rule 83.05, V.A.M.R.